IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE LAU, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 22-4174 |
| H.B. ONTARIO-FRANKLIN CORPORATION, d/b/a SOUND-BAR, STEFAN BILLEN, individually, and MARK JURCZYK, individually, | ) Jury Trial Demanded |
| Defendants. | ) |

## COMPLAINT

Plaintiff, Lawrence Lau, by his attorneys, the Garfinkel Group, LLC, pursuant to the Illinois Wage Payment and Collection Act, 820 ILCS 115 *et seq*., ("IWPCA") and the Fair Labor Standards Act, 29 U.S.C. §201 *et seq* ("FLSA"), the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq.*, ("IMWL"), and the Chicago Minimum Wage Ordinance, Chicago, Ill. Municipal Code, § 1-24 *et seq.* ("CMWO"), complains against Defendants H.B. Ontario-Franklin Corporation, d/b/a Sound-Bar, Stefan Billen, individually, and Mark Jurczyk, individually (collectively, "Defendants"), for failing to pay Plaintiff's unreimbursed expenses incurred on behalf of Defendants, final paycheck, and for failing to pay the minimum wage, and states:

## PARTIES

1. Lawrence Lau ("Plaintiff" or "Lau") is a former employee of Sound-Bar.

2. At all times relevant herein, Plaintiff resided in Cook County, Illinois.

3. H.B. Ontario-Franklin Corporation, d/b/a Sound-Bar ("Sound-Bar") is a nightclub offering late-night entertainment in Chicago, Illinois.

4. Sound-Bar is located in Cook County, Illinois.

1

5. Defendant, Mark Jurczyk, is Sound-Bar's President, and is listed as the same on Sound-Bar's corporate filings with the Illinois Secretary of State.

6. Jurczyk had hiring, firing, and disciplinary authority, and the ability to bind Sound-Bar financially and/or to contracts.

7. Defendant, Stefan Billen, is Sound-Bar's Secretary, and is listed as the same on Sound-Bar's corporate filings with the Illinois Secretary of State.

8. Billen had hiring, firing, and disciplinary authority, and the ability to bind Sound-Bar financially and/or to contracts.

9. At all relevant times, Defendants were Plaintiff's employer, and Plaintiff was Defendants' employee, within in the meaning of IWPCA, FLSA, IMWL, and CMWO 820 ILCS 115/2; 29 U.S.C. § 203(d), (e); 820 ILCS 105/3(c), (d); Chicago, Ill. Municipal Code, § 1-24-010.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); 29 U.S.C. § 216(b) (FLSA), and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

11. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1), (2) (venue, generally) and 29 U.S.C. § 216(b) (FLSA).

## FACTUAL ALLEGATIONS

12. Defendant, Sound-Bar, is a nightclub and event space in Chicago.

13. Sound-Bar advertises itself as, "the hottest, upscale nightclub that revolutionizes Chicago nightlife by boasting style, luxury and state-of-the-art technology. Showcasing 20,000 square feet of pure bliss, a European minimalist decor, along with flat screen monitors, laser lights and new sound components. . . .And the event calendar is like no other, featuring the world's top DJ talent all year long!"

2

14. Plaintiff was hired in 2007 by Defendants as the Director of Marketing & Promotions.

15. In 2012, Plaintiff was promoted to the position of General Manager, which he served until his termination.

16. When Plaintiff was promoted, he was offered a salary of $46,500 per year.

17. Plaintiff accepted this offer of compensation.

18. As the General Manager, Plaintiff was tasked with scheduling events, booking DJs, as well as overseeing the venue.

19. Plaintiff's position typically required him to work from 10:00 a.m. until 6 p.m., Monday through Thursday, and 8:30 a.m. until 5-6 p.m. on weekends for a total of 62 hours a week on average.

20. As the General Manager, Lau was instructed that he needed to front certain costs/expenses on behalf of the business out of his own personal funds, such as those for entertaining or other operational needs, that were to later be reimbursed by Defendants.

21. To that end, at or around the time of his promotion to General Manager, Plaintiff was instructed by Billen to front costs/expenses whenever a DJ or other performer's contract called for certain equipment or materials to be provided by Defendants.

22. Indeed, shortly after Plaintiff's hire, Defendants began ordering him to begin making expenditures on behalf of Defendants. When Plaintiff asked about reimbursements and/or Defendants providing him with a company credit card, he was simply told, "Go get it, we'll reimburse you for it," and was not given any further direction. Accordingly, Plaintiff began making expenditures on behalf of Defendants, and submitting reimbursement requests.

23. Defendants did not maintain a written reimbursement policy.

3

24. By way of example, Plaintiff was responsible for booking DJs to perform. That involved, in relevant part, purchasing items requested by the DJs to use during their performances, as well as providing them with transportation through Uber and/or taxi rides, or other means. On other occasions, Plaintiff had to purchase equipment or supplies related to maintaining Defendants' equipment.

25. In each instance, the item or service purchased was reasonable and required of Plaintiff, in the discharge of his employment duties, and directly benefitted Defendants' business interests.

26. With respect to each cost/expense for which Plaintiff fronted costs, Plaintiff notified Defendants of the expenditures within 30 days of incurring it, by providing a detailed description and cost, with supporting documentation. On no occasion did Defendants dispute the validity of the expenditures or Plaintiff's entitlement to reimbursement.

27. In all circumstances where he was required to incur costs/expenses for the benefit of the Company, he was authorized and/or expressly instructed by the Defendants to do so.

28. Defendants failed to reimburse Plaintiff for the full amount of his expenses incurred.

29. Through the end of 2015, Defendants regularly reimbursed Plaintiff for the costs/expenses that he fronted on behalf of Defendants. However, beginning in 2016, Defendants began failing to make their agreed and required reimbursement payments.

30. Beginning in approximately 2016, Defendants began failing to reimburse Plaintiff for the costs/expenses he incurred with Defendants' instruction and/or authorization, and on behalf of Defendants.

31. Indeed, at Defendants' authorization and/or express instructions, Plaintiff incurred the costs/expenses as General Manager on behalf of, and to the benefit of Defendants, set forth in detail in Exhibit A, which were not reimbursed.

4

32. The expenses incurred by Plaintiff, in the discharge of his duties as the General Manager, that have yet to be reimbursed by Defendant, totals **$54,789.79,** of the mandatory statutory interest penalties, provided for under the IWPCA.

33. With respect to each of the unpaid expense reimbursements set forth in Exhibit A, Plaintiff timely submitted a written reimbursement request within 30 days, but was not reimbursed.

34. All the expenditures listed in Exhibit A that were incurred by Plaintiff were necessary, incurred within the scope of his employment as a General Manager, were directly related to his performance thereof, and with Defendants' authorization and/or express instructions.

35. Indeed, of the expenses outlined in Exhibit A, Defendants only provided reimbursement to Plaintiff in the amount of $11,000, leaving a balance due of $54,789.79.

36. With respect to the expenditures described in Exhibit A, Plaintiff was either personally and expressly instructed to make the purchase, on behalf of Sound-Bar, by Defendants Billen and/or Jurczyk, or had been previously instructed/authorized by Billen and/or Jurczyk to provide a specific performer with all equipment and materials that they required pursuant to the parties' past practice of reimbursing Plaintiff after he front costs for expenditures.

37. Both of Billen and Jurczyk, repeatedly represented to Plaintiff that he would be reimbursed for his expenses at some future date, but failed to do so.

38. To date, Defendants have refused to pay Plaintiff for the outstanding balance of his reimbursements.

<u>Failure to Pay Final Paycheck</u>

39. Plaintiff's employment ended on March 14, 2021.

40. Defendants failed to pay Plaintiff his final paycheck, which was due on March 14, 2021. The total wages due for his final pay is $1,935.89, before the assessment of the mandatory statutory interest penalties, provided for under the IWPCA.

5

41. Defendants, including Sound-Bar owners Billen and Jurczyk, knew at the time of the cessation of Plaintiff's employment, that he was owed his final paycheck *and* over $50,000 in unreimbursed expenses made on behalf of Defendants.

42. Notwithstanding this knowledge, Defendants, including Sound-Bar owners Billen and Jurczyk, made the decision not to reimburse Plaintiff or pay his final paycheck.

<u>Minimum Wage Violation</u>

43. During Plaintiff's final two weeks of work for Defendants, he worked over approximately 120 hours between March 1 and March 14, 2021.

44. Plaintiff was paid $0 for his hours worked as set forth in ¶ 40, meaning he earned less than the minimum wage for all hours worked between March 1 and March 14, 2021.

45. During the same period of time, the federal minimum wage was $7.25 per hour, the Illinois minimum wage was $11 per hour, and the Chicago minimum wage was $14 per hour.

46. As a result, in addition to failing to pay Plaintiff's final paycheck and reimburse expenses, in violation of the IWPCA, Defendants' actions, also violate the FLSA, IMWL, and CMWO. 29 U.S.C. § 206(a)(1)(c); 820 ILCS § 105/4; and §6-105-050.

47. Defendants, including Sound-Bar owners Stefan Billen and Mark Jurczyk, knew or should have known that it was illegal to require Plaintiff to perform two weeks' work without any pay, whatsoever.

48. Accordingly, Defendants' violations of the FLSA, IMWL, IWPCA, and CMWO were willful.

## COUNT I
## IWPCA—UNREIMBURSED EXPENSES
## ALL DEFENDANTS

49. Paragraphs 1 – 48 are incorporated by reference.

50. The IWPCWA requires an employer to reimburse an employee for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to the services performed for the employer. 820 ILCS 115/9.5.

51. Plaintiff incurred reasonable expenditures that were required of him in the discharge of his employment duties, that benefitted Defendant.

52. Plaintiff submitted supporting documentation and notified Defendant of the outstanding costs/expenses.

53. Defendant refused to reimburse Plaintiff for the expenditures incurred.

54. Defendants' refusal to reimburse Plaintiff is a violation of IWPCWA, 820 ILCS 115/9.5.

55. Decision makers who knowingly permit the violation of the Wage Act face individual liability for such violations. 820 ILCS 115/13.

56. Billen and Jurczyk were decision-makers, as defined under the IWPCA, as they owned Sound-Bar, and had the power to hire, fire, discipline, and making financial and contractual decisions binding Defendants.

57. Billen and Jurczyk knew Plaintiff was owed for years of unreimbursed expenses, and willfully failed to pay those reimbursements.

58. As a direct result of Defendants' violation of the IWPCA, Plaintiff was damaged in the form of being denied reimbursement of his reasonable expenditures outlined in Exhibit A.

**COUNT II**
**IWPCA – FINAL PAYCHECK**
**ALL DEFENDANTS**

59. Paragraphs 1 – 48 are incorporated by reference.

60. The IWPCA requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation. 820 ILCS 115/2.

7

61. Plaintiff was entitled to his final compensation on March 14, 2021, in the amount of $1,935.89.

62. Defendants failed to pay Plaintiff his final compensation.

63. Defendants' failure to pay Plaintiff's final compensation is a violation of IWPCA.

64. Decision makers who knowingly permit the violation of the Wage Act face individual liability for such violations. 820 ILCS 115/13.

65. Billen and Jurczyk were decision-makers, as defined under the IWPCA, as they owned Sound-Bar, and had the power to hire, fire, discipline, and make financial and contractual decisions binding Defendants.

66. Billen and Jurczyk knew Plaintiff was owed his final paycheck, and willfully failed to pay his final paycheck.

67. As a direct result of Defendants' violations of the IWPCA, Plaintiff was damaged in the form of being denied his final compensation.

## COUNT III
## FLSA – FAILURE TO PAY MINIMUM WAGE
## ALL DEFENDANTS

68. Paragraphs 1 – 48 are incorporated by reference herein.

69. Pursuant to the FLSA, an action to recover unpaid wages may be maintained in any federal or state court of competent jurisdiction. 29 U.S.C. § 216(b).

70. The FLSA requires an employer to pay its covered, non-exempt employees the federal minimum wage for each hour worked in a workweek. 29 U.S.C. § 206(a)(1)(c).

71. Individual corporate officers or owners may be held liable for FLSA violations where they possess operational control. *Solis v. Int'l Detective & Protective Service, Ltd.*, 819 F. Supp. 2d 740, 748 (N.D. Ill. 2011) (citing *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991)).

72. Billen and Jurczyk possesses and exercises the following authority as it relates to Defendants:

   a. The power to hire and fire employees;

   b. Supervisory authority over employees, including control over their work schedules and conditions of employment;

   c. Determining employees' methods and rates of pay; and

   d. Maintenance of employees' records.

73. Defendants failed to pay Plaintiff any wages for his hours worked the weeks of March 1 – 14, 2021. During those same weeks, Plaintiff worked over 60 hours each week.

74. As a direct result of Defendants failures to pay Plaintiffs' wages, he earned less than the minimum wage during those workweeks.

### COUNT IV
### IMWL – FAILURE TO PAY MINIMUM WAGE
### SOUND-BAR

75. Paragraphs 1 – 49 are incorporated by reference herein.

76. The IMWL requires an employer to pay all non-exempt employees the minimum wage. 820 ILCS 105/4(a).

77. Defendants failed to pay Plaintiff any wages for his hours worked the weeks of March 1 – 14, 2021. During those same weeks, Plaintiff worked over 60 hours each week.

78. As a direct result of Defendants failures to pay Plaintiffs' wages, he earned less than the minimum wage during those workweeks.

### COUNT V
### CMWO – FAILURE TO PAY MINIMUM WAGE
### ALL DEFENDANTS

79. Paragraphs 1 – 48 are incorporated by reference herein.

80. The CMWO requires employers to pay their employees at least the state minimum wage for all hours worked, in the same manner as required under IMWL, Chicago, Ill. Municipal code, § 1-24-040.229.

81. Defendants violated the CMWO by failing to pay the Plaintiff at least the Chicago minimum wage between March 1 and 14, 2021.

82. Defendants' violation of the CMWO was willful.

83. Billen and Jurczyk possesses and exercises the following authority as it relates to Defendants:

   a. The power to hire and fire employees;

   b. Supervisory authority over employees, including control over their work schedules and conditions of employment;

   c. Determining employees' methods and rates of pay; and

   d. Maintenance of employees' records.

84. Defendants failed to pay Plaintiff any wages for his hours worked the weeks of March 1 – 14, 2021. During those same weeks, Plaintiff worked over 60 hours each week.

85. As a direct result of Defendants failures to pay Plaintiffs' wages, he earned less than the minimum wage during those workweeks.

Wherefore, Plaintiff Lawrence Lau respectfully requests that this Court enter judgment in his favor against Defendant Sound-Bar awarding him:

A. Payment to Plaintiff in the amount of his unpaid wages, to wit, his reasonable expenditures incurred in the amount of $54,789.79, pursuant to the IWPCA;

B. Payment to Plaintiff in the amount of his unpaid wages, to wit, his final compensation in the amount of $1,935.89, pursuant to the IWPCA;

C. Statutory damages equivalent to the maximum statutory monthly interest penalties available pursuant to 820 ILCS 115/114;

D. Plaintiff's unpaid wages for violations of the federal minimum wage under the FLSA;

E. Liquidated damages in an amount equal to the amount of unpaid minimum wages found due pursuant to FLSA;

F. Awarding prejudgment interest with respect to the amount of unpaid minimum wages;

G. Plaintiff's unpaid wages for violations of the IMWL;

H. Statutory damages for minimum wage violations pursuant to the 5% interest penalties for IMWL violations;

I. Damages in the form of unpaid minimum wages pursuant to the Chicago Ordinance;

J. Statutory treble damages for unpaid minimum wage violations, pursuant to the Chicago Ordinance, Ill. Municipal Code, § 1-24-110;

K. Awarding reasonable attorneys' fees and costs incurred in filing this action; and

L. Ordering such other and further relief as the Court deems just and proper.

Dated: August 9, 2022

| | |
|---|---|
| The Garfinkel Group, LLC | Respectfully submitted, |
| 6252 N. Lincoln Avenue, Suite 200 | |
| Chicago, IL 60622 | |
| Firm No. 63494 | |
| Max Barack (IARDC No. 6312302) | */s/ Max Barack* |
| | One of the Plaintiff's Attorneys |

**EXHIBIT A**

<u>2016</u>

- $220.49—MicroCenter (Router)
- $944.84—Apple (Video Computer)
- $264.60—Midwest Stereo (Fog Juice)
- $145.68—Home Depot (Halloween Decorations)
- $133.08—Binny's (DJ Rider)
- $77.14—Best Buy (USB Hub)
- $74.55—Wildfire (DJ Dinner)
- $108—Uber (through 8/18)
- $16.99—Adobe CC
- $346—Uber (through 9/21)
- $58.54—BH Photo (Power Supply)
- $16.99—Adobe CC
- $51.76—Interest
- $396—Uber (through 10/21)
- $88.09—Lowes (Hardware)
- $16.99—Adobe CC
- $20—Parking
- $60.97—Interest
- $299—Uber (through 11/21)
- $31.86—Adobe CC
- $79.17 Interest
- $224—Uber (through 12/6)
- $175—Midwest Stereo (Rental Equipment)
- $400—Facebook Advertisements
- $42.96—Midwest Stereo (Cables)
- $27.80—Interest
- $234.90—Network Solutions (Domain Renewal
- $200—Facebook Advertisements

1

- $106.02—Deltronics (Repair)
- $150—Deltronics (Repair)
- $24.20—Interest
- $232.56 Deltronics (Repairs)
- $79.50—ID Scan Battery
- $150—FaceBook Advertisements

2017

- $102—Door Stamps
- $45.56—Interest
- $657.70—Midwest Stereo
- $142.41—Microcenter (Cat5 Cables)
- $264.60—Midwest Stereo
- $280.63—Facebook Advertisements
- $61.58—Interest
- $272.56—Deltronics
- $155.52—Facebook Advertisements
- $142.25—Facebook Advertisements
- $256.84—MicroCenter
- $16.28—Interest
- $298.21—Garrett's (Agency Gifts)
- $194.98—Facebook Advertisements
- $132.23—Facebooks Advertisements
- $75—Virgin Airlines
- $169.55—Sixt Rent a Car
- $214.99—Midwest Stereo
- $91.49—Micro Center
- $59.44—Home Depot
- 4100—Facebook Advertisements
- $228.19—Kings Bowl
- $145.77—Four Points Sheraton
- $87.10—Apple Store

- $28.93—Interest
- $23.81—Whole Foods (DJ Rider)
- $301.02—Deltronics Repair
- $5,240.79—Guitar Center (CDJ Nexus Upgrade)
- $8.05—Facebook Advertisements
- $91.95—Facebook Advertisements
- $100—Midwest Stereo (Rental)
- $149.72—Uber (through 12/21)
- $31.86—Adobe CC
- $211.56—Deltronics (Repairs)
- $172.04—Uber (through 1/20)
- $67.01—Target (Ferry Rider)
- $185.76—Binny's (Ferry Rider)
- $31.86—Adobe CC
- $122.26—Interest
- $392.39—Uber (through 2/21)
- $522.30—Midwest Stereo
- $24.29—Amazon
- $132.30—Midwest Stereo
- $155.63—Deltronics (Repairs)
- $31.86—Adobe CC
- $103.18—Whole Foods (Rider)
- $69.12—Amazon
- $159.93—Interest
- $486.13—Uber (through 3/21)
- $138.20—Alaska Air
- $138.20—Alaska Air
- $138.20—Virgin America
- $138.20—Virgin America
- $1,484.74—Expedia
- $127.85—Guitar Center

3

- $118.88—Mondrian Hotel
- $77.21—Micro Center
- $31.86—Adobe CC
- $184.71—Interest
- $238.84—Uber (through 4/21)
- $84—Kings Bowl
- $158.76—Midwest Stereo
- $66—Amazon
- $31.86—Adobe CC
- $396.20—Deltronics
- $340.88—Hotels.com
- $216.91—Interest
- $164.43—Costco (Gift for agency)
- $80—Uber (through 5/19)
- $31.86—Adobe CC
- $216.39—Interest
- $119.92—Netbrands Media
- $375.98—Uber (through 6/21)
- $105—Cut Card Stock (Poster Paper)
- $44.06—Guitar Center (Cables)
- $31.86—Adobe CC
- $249.42—Interest
- $306.83—Uber (through 7/21)
- $264.60—Midwest Stereo (Fog Juice)
- $31.86—Adobe CC
- $328.77—Doolins (Wristbands)
- $228.04—Interest
- $200.56—Uber (through 8/21)
- $99.23—Guitar Center
- $104.10—Deltronics (Repairs)
- $57.52—Binny's (DJ Rider)

4

- $31.86—Adobe CC
- $218.90—Interest
- $372.49—Uber (through 9/20)
- $12.66—Microcenter (Network Adaptor)
- $100—Midwest Stereo (Rental Gear)
- $50.66—Interest
- $1940.40—Guitar Center (Mixer)
- $31.97—Apple (Charging Cables
- $264.60—(Fog Juice)
- $26.44—Interest
- $443.92 Facebook Advertisements
- $306.14—Facebook Advertisements
- $224.40—Facebook Advertisements
- $37.57—Facebook Advertisements
- $9.28—Interest
- $382.43—Facebook Advertisements
- $305.41—Facebook Advertisements
- $160.14—Facebook Advertisements
- $11.66—Facebook Advertisements
- $59.14—Whole Foods (DJ Rider)
- $62.73—Whole Foods (DJ Rider)
- $87.62—Whole Foods (DJ Rider)
- $141.08—Micro Center (Batteries and Extra Long Cat5)
- $89.40—Home Depot
- $6.71—Walgreens
- $582.01—Potbelly (Dolby Catering)
- $32.83—Target (Batteries)
- $275.61—Microcenter (Wireless Router)

2018

- $204.77—Interest
- $285.08—Uber (through 10/20)

5

- $$31.86—Adobe CC
- $370.60—Studio Equipment Rentals (Keyboard and Live Gear)
- $45.10—Interest
- $154.83—Binny's (Ferry Corsten Rider)
- $435.03—Uber (through 11/21)
- $31.86—Adobe CC
- $64.63—Home Depot
- $88.20—Doolan's
- $94.56—Whole Foods (DJ Rider)
- $44.09—Best Buy (iPad Case)
- $412.06—Container Store (NYE Coat Racks)
- $101.14—Whole Foods (DJ Rider)
- $286.93—Uber (through 12/21)
- $42.49—Adobe CC
- $192.82—Facebook Advertisements

2019
- $158—Uber (through 1/14)
- $77.82—Office Depot
- $42.49—Adobe
- $409.16—Uber (through 2/19)
- $34.16—Guitar Center
- $68.27—Guitar Center
- $42.49—Adobe
- $247.11—Uber (through 3/18)
- $42.49—Adobe
- $471.79—Uber (through 4/20)
- $660.67—Guitar Center
- $$42.49—Adobe
- $459.75—Uber (through 5/20)
- $$29.18—Walgreens (DJ Rider)
- $42.49—Adobe

6

- $148.73—Home Depot
- $355.65—Uber (through 6/17)
- $11.01—Home Depot
- $106.24—Microsoft
- $99—Dropbox
- $36.67—Jewel
- $5.19—Mariano's
- $42.49—Adobe
- $299.36—Uber (through 7/16)
- $167.01—Mariano's (DJ Rider)
- $27.14—Shell (DJ Rider)
- $180.75—Apple (Chargers)
- $418.88—Guitar Center
- $385.86—Guitar Center
- $42.49—Adobe
- $87.30—Amazon (USB Drives)
- $106.49—Interest
- $461.22—Uber (through 8/19)
- $26.33—FedEx
- $51.59—Sherwin Williams
- $60.23—Sherwin Williams
- $82.31—Sunbelt Rentals
- $228.46—Sunbelt Rentals
- $27.09—Google (SB Email Accounts)
- $164.06—Home Depot (Vacuum Filters)
- $278.13—Shop Vac
- $67.89—Binny's (DJ Rider)
- $192.90—MicroCenter
- $523.40—Studio Instrument Rentals (DJ Gear Rentals)
- $236.89—Uber (through 9/16)
- $205.36—MicroCenter (Hard Drive Repair)

7

- $98.72—Guitar Center
- $33.67—Office Depot
- $114.68—MicroCenter (Cat5 Cables for CDJs)
- $17.86—Home Depot (Keys)
- $35—Google (Sound-Bar Email Addresses)
- $181.66—Home Depot
- $83.94—Apple (USB C Conversion Dongles)
- $1.79—Home Depot (Washers)
- $412.22—Uber (through 10/18)
- $36—Google (Sound-Bar Email Addresses)
- $79.78—Whole Foods (DJ Rider)
- $79.80—Target (DJ Rider)
- $451.11—Uber (through 11/18)
- $56.97—Amazon (Halloween Lights)
- $25.99—Amazon (Halloween)
- $203.60—Just Artifacts (Halloween)
- $352.26—Amazon (Halloween)
- $33.98—Amazon (Halloween)
- $681.54—Amazon (Halloween)
- $13.22—Michael's (Halloween)
- $38.93—Target (Halloween)
- $63—Amazon (Halloween)
- $125.19—JoAnn (Halloween)
- $152.61—Amazon (Halloween)
- $357.42—Fantasy Costumes (Makeup)
- $94.95—Amazon (Halloween)
- $105.06—Amazon (Halloween)
- $48.34—Amazon (Halloween)
- $41.60—Google (Email Accounts)
- $96.26—Target (DJ Rider)
- $324.26—Uber (through 12/17)

8

- $23.57—Jewel (DJ Rider)
- $48.16—Google (Sound-Bar Emails)
- $23.16—Office Depot (Clickers)
- $32.73—Uber(through 12/23)
- $50—Google (Sound-Bar Emails)
- $33.67—Office Depot (Counters)
- $6,882.90—Insurance